UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**U.S. SECURITIES AND EXCHANGE COMMISSION,**

        **Plaintiff,**

v.                                    **Case No: 6:09-cv-1963-Orl-28GJK**

**BIG APPLE CONSULTING USA, INC., MJMM INVESTMENTS, LLC, MARC JABLON, MATTHEW MAGUIRE, MARK C. KALEY, and KEITH JABLON,**

        **Defendants.**
_____/

## ORDER

In this securities enforcement action, the Court and a jury have found that Defendants violated various securities laws in connection with publicizing false information about CyberKey Solutions, Inc. and selling shares of its stock. The case is now before the Court on the Securities and Exchange Commission's Motion to Set Penalties Against Defendants Big Apple Consulting USA, Inc., MJMM Investments LLC, Marc Jablon, Mark Kaley, and Matthew Maguire.[1] The parties have stipulated to certain disgorgement, penny-stock bars, and other injunctive relief, leaving monetary penalties as the only issue left for the Court to decide.

### I.  Background

Defendant Big Apple Consulting USA, Inc. ("Big Apple") and its wholly owned

---

[1] Big Apple Consulting USA, Inc., MJMM Investments LLC, and Marc Jablon have filed a Response (Doc. 227) and Mark Kaley has filed a separate Response (Doc. 226).

subsidiary MJMM Investments, LLC ("MJMM") provide consulting and public relations services to microcap companies. (Joint Pretrial Statement ("JPS"), Doc. 65, at 11). During the relevant time period, the individual Defendants controlled Big Apple and MJMM. Defendant Marc Jablon ("M. Jablon") was the president and CEO of Big Apple, (id. at 13); Defendant Matthew Maguire was the vice president of Big Apple, (id. at 14); and Defendant Mark Kaley was president of MJMM and an officer of Big Apple, (id.).

CyberKey Solutions, Inc. ("CyberKey") sold flash memory drives and other electronic devices and was publicly traded beginning around 2003. (Id. at 10). James Plant served as CyberKey's chief executive officer from 2001 until approximately March 2009. (Id.).

On June 1, 2005, MJMM signed a consulting agreement with CyberKey in which MJMM agreed to provide public relations services intended to promote CyberKey's business. (Id. at 11). Although MJMM signed the agreement with CyberKey, it was contemplated at that time that Big Apple and its subsidiaries would provide all the services detailed in the consulting agreement. (Id.). MJMM and Big Apple received CyberKey stock as payment for their services, and they also had the option to purchase additional CyberKey stock at a discounted rate. (Pl.'s Exs. 53 ¶ 2.02; 55). Between July 5, 2005 and March 20, 2007, Big Apple and MJMM received millions of shares of CyberKey stock and sold millions of those shares into the market for approximately $7.5 million. (Pl.'s Exs. 201; 204-R at 9).

At the same time that Big Apple and MJMM were selling CyberKey stock, they drafted numerous press releases publicizing a fictitious $25 million purchase order that CyberKey claimed to have from the Department of Homeland Security, and they

promoted CyberKey stock to brokers and dealers through Big Apple's telephone call room. (Pl.'s Ex. 205; Ex. D to Doc. 223 at 19-20, 85-86). Despite evidence that CyberKey's purchase order was fictitious, Big Apple and MJMM continued to promote and sell CyberKey's stock. (See Doc. 223 at 6-8). It eventually came to light that the purchase order did not exist, and at least 500 investors lost a total of over $3 million. (Pl.'s Ex. 45 at 5-9).

Beginning in November 2005 and continuing through March 19, 2007, CyberKey and Plant had engaged in an elaborate scheme to publicize the fictitious Department of Homeland Security purchase order. (JPS, Doc. 65, at 12). The SEC sued Plant in connection with this scheme, and Plant was also indicted in the U.S. District Court for the Eastern District of Pennsylvania on charges of securities fraud and obstruction of justice, among others. (Id.). In March 2009, Plant received a sentence of 97 months' imprisonment in connection with the criminal charges. (Id.).

The SEC filed its Complaint (Doc. 1) against Defendants on November 18, 2009, alleging that they violated various securities laws in connection with their promotion and sale of CyberKey stock. The parties tried their case before a jury, and the jury returned a verdict finding that all Defendants had violated Section 20(e) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78t(e), by aiding and abetting CyberKey's and Plant's violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. The jury specifically found that all Defendants had acted with both actual knowledge and severe recklessness in committing this violation. The jury also found that all Defendants had violated fraud provisions in Sections 17(a) of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77q(a). Additionally, this Court ruled on

3

summary judgment that Big Apple, MJMM, M. Jablon, and Maguire violated Section 5 of the Securities Act by selling unregistered shares of CyberKey stock, that Big Apple and MJMM violated Section 15(a) of the Exchange Act by acting as unlicensed dealers, and that M. Jablon, Kaley, and Maguire violated Section 20(e) of the Exchange Act by aiding and abetting Big Apple's and MJMM's Section 15(a) violations.

## II.  Analysis

Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act authorize three tiers of civil monetary penalties against violators of the Acts. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). Tier I penalties are generally applicable; Tier II penalties require that the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and Tier III penalties require the Tier II elements in addition to "substantial losses or . . . significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(A)-(C); 15 U.S.C. § 78u(d)(3)(B)(i)-(iii). "The tier determines the maximum penalty, with the actual amount of the penalty left up to the discretion of the district court." SEC v. Kern, 425 F.3d 143, 153 (2d Cir. 2005). For violations occurring after February 14, 2005, but before March 4, 2009, the maximum Tier I, II, and III penalties for natural persons are $6,500, $65,000, and $130,000, respectively, while the maximum penalties for other persons are $65,000, $325,000, and $650,000. 17 C.F.R. § 201.1002, Table III to Subpart E.

These civil penalties "are designed to punish the individual violator and deter future violations of the securities laws." SEC v. Opulentica, LLC, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007). "In determining whether civil penalties should be imposed, and the amount of the fine, courts look to a number of factors, including (1) the

egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." Id. Additionally, "while these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a 'discretionary nature' and each case 'has its own particular facts and circumstances which determine the appropriate penalty to be imposed.'" Id. (quoting SEC v. Moran, 944 F. Supp. 286, 296-97 (S.D.N.Y.1996)).

The SEC seeks Tier III penalties against all Defendants, except Keith Jablon,[2] for each of their violations. In particular, the SEC seeks a $120,000 penalty against M. Jablon for each of his four violations, a $120,000 penalty against Maguire for each of his four violations, and a $120,000 penalty against Kaley for each of his three violations. The SEC also seeks to hold Big Apple and MJMM jointly and severally liable for $600,000 for each of their four violations, for a total of $2.4 million assessed against each of them.

In light of Defendants' particular circumstances and the individual factors listed above, however, lesser penalty amounts are appropriate. While Defendants acted knowingly and recklessly in aiding CyberKey's and Plant's fraud and investors suffered significant losses as a result of the fraud, Defendants did not have ultimate authority

---

[2] In light of Keith Jablon's financial condition and health status, the SEC does not seek a monetary penalty against him.

over CyberKey's fraudulent press releases.[3] It was CyberKey and Plant who ultimately had authority over the content of the fraudulent press releases. Additionally, although the SEC seeks the same penalty amount against M. Jablon, Kaley, and Maguire for each of their violations, M. Jablon's violations warrant a higher penalty. M. Jablon exercised significant authority over the other Defendants through his position as president and CEO of Big Apple. M. Jablon also continues to work for a company that provides services similar to those provided at Big Apple and MJMM—he works as a consultant for Boost Marketing, a company he co-founded that provides consulting and marketing services to penny-stock companies. (Ex. L to Doc. 223, at 15). Boost Marketing provides services to both publicly traded companies and privately traded companies. (Id.). The SEC has not presented evidence that Kaley or Maguire continues to provide services similar to those provided at Big Apple and MJMM. The SEC's Motion does not point to any evidence of Maguire's current employment, and the SEC has stipulated that Kaley currently works part-time at Disney World Parks and Resorts in Park Operations. (Doc. 226-1 at 11).

The Court therefore finds the following monetary penalties appropriate:

1. Big Apple shall pay a civil monetary penalty of $1,130,000. This penalty consists of $500,000 for violating Section 20(e) of the Exchange Act, $500,000 for violating Section 17(a) of the Securities Act, $65,000 for violating Section 15 of the Exchange Act, and $65,000 for violating Section 5 of the Securities Act.

---

[3] The SEC has stipulated that "CyberKey and James Plant ultimately had the authority over the content of press releases issued by CyberKey and all of CyberKey's press releases were approved and releases by James Plant." (Doc. 120 at 1).

2. MJMM shall pay a civil monetary penalty of $1,130,000. This penalty consists of $500,000 for violating Section 20(e) of the Exchange Act, $500,000 for violating Section 17(a) of the Securities Act, $65,000 for violating Section 15 of the Exchange Act, and $65,000 for violating Section 5 of the Securities Act.

3. Big Apple and MJMM are jointly and severally liable for paying their penalties.

4. Marc Jablon shall pay a total civil monetary penalty of $213,000. This penalty consists of $100,000 for violating Section 20(e) of the Exchange Act by aiding and abetting CyberKey's and Plant's violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, $100,000 for violating Section 17(a) of the Securities Act, $6,500 for violating Section 20(e) of the Exchange Act by aiding and abetting Big Apple's and MJMM's Section 15 violations, and $6,500 for violating Section 5 of the Securities Act.

5. Mark Kaley shall pay a total civil monetary penalty of $156,500. This penalty consists of $75,000 for violating Section 20(e) of the Exchange Act by aiding and abetting CyberKey's and Plant's violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, $75,000 for violating Section 17(a) of the Securities Act, and $6,500 for violating Section 20(e) of the Exchange Act by aiding and abetting Big Apple's and MJMM's Section 15 violations.

6. Matthew Maguire shall pay a total civil monetary penalty of $163,000. This penalty consists of $75,000 for violating Section 20(e) of the Exchange Act by aiding and abetting CyberKey's and Plant's violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, $75,000 for violating Section 17(a) of the Securities Act,

$6,500 for violating Section 20(e) of the Exchange Act by aiding and abetting Big Apple's and MJMM's Section 15 violations, and $6,500 for violating Section 5 of the Securities Act.

### III. Conclusion

In accordance with the foregoing, the SEC's request for civil monetary penalties, disgorgement, and injunctive relief is **GRANTED**. The Clerk is directed to enter a final judgment for Plaintiff in accordance with this Order in the form attached hereto, which the Court hereby approves pursuant to Federal Rule of Civil Procedure 58(b)(2). Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida on March 29, 2013.

United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties